IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DEBRA CHOAT,                                      No. 6:17-cv-00617-HZ

                        Plaintiff,

        v.

NANCY A. BERRYHILL, Acting                        OPINION & ORDER
Commissioner of Social Security,

                        Defendant.


Merrill Schneider
SCHNEIDER KERR & ROBICHAUX
P.O. Box 14490
Portland, Oregon 97293

        Attorney for Plaintiff

Billy J. Williams
UNITED STATES ATTORNEY
District of Oregon
Renata Gowie
ASSISTANT UNITED STATES ATTORNEY
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

Michael Howard
SPECIAL ASSISTANT UNITED STATES ATTORNEY
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104-7075

     Attorneys for Defendant

HERNANDEZ, District Judge:

     Plaintiff Debra Choat brings this action seeking judicial review of the Commissioner's final decision to deny disability insurance benefits (DIB). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). I affirm the Commissioner's decision at step two in part, and otherwise reverse the Commissioner's decision and remand for additional proceedings.

## PROCEDURAL BACKGROUND

     Plaintiff applied for DIB on September 3, 2013, alleging an onset date of March 6, 2010. Tr. 151-52[1]. Her application was denied initially and on reconsideration. Tr. 67-67, 76, 90-94 (Initial); Tr. 77-87, 97-101 (Recon.). On May 27, 2015, Plaintiff appeared, with counsel, for a hearing before an Administrative Law Judge (ALJ). Tr. 33-66. On August 7, 2015, the ALJ found Plaintiff not disabled. Tr. 14-32. The Appeals Council denied review. Tr. 1-5.

## FACTUAL BACKGROUND

     Plaintiff alleges disability based on having deteriorating bones and depression. Tr. 164. At the time of the hearing, she was fifty-seven years old. Tr. 37. She has a GED and has past relevant work experience as a teacher's aide, a grocery checker, a deli worker, and a sales clerk. Tr. 39, 62.

---

[1] The Administrative Law Judge's decision notes a protective filing date of June 3, 2013. Tr. 17.

SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. §§ 423(d)(1)(A), 1382c(3)(a).

Disability claims are evaluated according to a five-step procedure. *See Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability).   The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity."  If so, the claimant is not disabled.  *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b).  In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c).  If not, the claimant is not disabled.

In step three, the Commissioner determines whether plaintiff's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d).  If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yucker*t, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform "past relevant work."  20

C.F.R. §§ 404.1520(e), 416.920(e).  If the claimant can perform past relevant work, the claimant is not disabled.  If the claimant cannot perform past relevant work, the burden shifts to the Commissioner.  In step five, the Commissioner must establish that the claimant can perform other work.  *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f).  If the Commissioner meets his burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled.  20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset date through March 31, 2012, her date of last insured.  Tr. 19.  Next, at steps two and three, the ALJ determined that Plaintiff has the severe impairment of depressive disorder, but that she did not have an impairment or combination of impairments that met or medically equaled a listed impairment.  Tr. 20.

At step four, the ALJ concluded that Plaintiff has the RFC to perform a full range of work at all exertional levels but that she was limited to understanding, remembering, and carrying out simple routine repetitive tasks and to only occasional contact with the general public and coworkers.  Tr. 22.  With this RFC, the ALJ determined that Plaintiff is unable to perform any of her past relevant work.  Tr. 25-26.  However, at step five, the ALJ determined that Plaintiff is able to perform jobs that exist in significant numbers in the economy such as garment bagger, labeler, and collator.  Tr. 27.  Thus, the ALJ determined that Plaintiff is not disabled.  *Id.*

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the

Commissioner's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's") (internal quotation marks omitted).

## DISCUSSION

Plaintiff argues that the ALJ made three errors: (1) failing to find any of her physical impairments to be severe at step two; (2) improperly rejecting the opinion of her treating physician; and (3) failing to give any reasons for disregarding her subjective statements.

I. Credibility Assessment

The ALJ is responsible for determining credibility. *Vasquez*, 572 F.3d at 591. Once a claimant shows an underlying impairment and a causal relationship between the impairment and some level of symptoms, clear and convincing reasons are needed to reject a claimant's testimony if there is no evidence of malingering. *Carmickle v. Comm'r*, 533 F.3d 1155, 1160 (9th Cir. 2008) (absent affirmative evidence that the plaintiff is malingering, "where the record includes objective medical evidence establishing that the claimant suffers from an impairment that could

reasonably produce the symptoms of which he complains, an adverse credibility finding must be based on 'clear and convincing reasons'"); *see also Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (ALJ engages in two-step analysis to determine credibility: First, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged"; and second, if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give "specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms.") (internal quotation marks omitted).

When determining the credibility of a plaintiff's complaints of pain or other limitations, the ALJ may properly consider several factors, including the plaintiff's daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence. *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). As the Ninth Circuit explained in *Molina*;

> In evaluating the claimant's testimony, the ALJ may use ordinary techniques of credibility evaluation. For instance, the ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct, unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and whether the claimant engages in daily activities inconsistent with the alleged symptoms[.] While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting[.] Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.

*Molina*, 674 F.3d at 1112-13 (citations and internal quotation marks omitted).

In determining Plaintiff's RFC between steps three and four, the ALJ recited the

appropriate two-part credibility analysis. Tr. 22. She identified Plaintiff's statements in Plaintiff's disability application regarding difficulty standing and walking, unspecified episodes of nervousness, and being "jumpy." Tr. 22-23. The ALJ also cited to Plaintiff's September 13, 2013 Adult Function Report where Plaintiff alleged that her impairments limited her ability to lift more than five pounds, stand for more than five minutes, walk for more than one-half of a block, and sit for more than ten minutes. Tr. 23 (citing Tr. 176). The ALJ then noted Plaintiff's limited activities of daily living and her trouble sleeping, at least before January 2012 when she reported improved sleep with prescribed medication. *Id.* (citing Tr. 172, 376, 464).

Following this discussion of Plaintiff's subjective limitations, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." Tr. 23. The Ninth Circuit has noted in regard to similar language, that "'ALJs routinely include this statement in their written findings as an introduction to the ALJ's credibility determination' before 'identifying what parts of the claimant's testimony were not credible and why.'" *Trevizo v. Berryhill*, 871 F.3d 664, 678 n.6 (9th Cir. 2017) (quoting *Treichler v. Comm'r*, 775 F.3d 1090, 1103 (9th Cir. 2014) (brackets omitted)). The use of this "generic language" is permissible, *id.*, but the ALJ must still provide specific, clear and convincing reasons (when there is no malingering as is the case here), for rejecting a claimant's testimony.

Even though the ALJ cited to several physical limitations, she analyzed only the credibility of Plaintiff's subjective assertions regarding her depression. Tr. 23-24. On this issue, the ALJ's two-paragraph discussion began with her observation that Plaintiff had high scores on

two objective mental health tests, one measuring depression and the other measuring anxiety. Tr. 23 (noting Plaintiff's January 2012 GAD-7 and PHQ-9 scores and stating that they were considered high; citing Tr. 378, 379). Next, she noted that also in January 2012, Plaintiff's Global Assessment of Functioning Score (GAF) was 55, followed by GAF scores of 60 in February and in March 2012. Tr. 23-24. She also cited to a March 2012 report by Plaintiff to a counselor that she was feeling better and stating that she believed her medication was possibly working. Tr. 24. The ALJ then noted that the objective evidence indicated that although she was observed as exhibiting a depressed mood, she was oriented and her psychological insight was fair. *Id.* Furthermore, a chart note from several months after her date of last insured indicated that overall, Plaintiff was well controlled on her psychiatric regimen. *Id.*

In the next paragraph, the ALJ observed that Plaintiff had received conservative treatment of psychotherapy and medication during the applicable time period and had not been hospitalized for her depression. *Id.* Any increase in symptoms during the applicable period was attributable, in the ALJ's opinion, to situational stressors with symptoms improving quickly upon resolution of the stressors. *Id.* The ALJ then noted that as part of applying for a census job, Plaintiff attended classes for one to two weeks although she could not fulfill the job duties. *Id.* The ALJ found "that attending classes for this period of time goes against the claimant's credibility concerning how her impairments limit her work activity." *Id.* Therefore, the ALJ concluded, the objective evidence supported her RFC that Plaintiff can understand, remember, and carry out simple routine repetitive tasks and only occasional contact with the general public and coworkers. *Id.*

Plaintiff correctly observes that the ALJ failed to offer any reason for finding Plaintiff's

subjective complaints about her physical limitations to be less than credible. Although the ALJ did not expressly explain the omission, presumably it is because the ALJ found no severe physical impairments at step two. I address the step two argument below.

Plaintiff argues that as to her mental impairments, the ALJ's discussion is no more than a summary of the medical record with no indication of what specific testimony the ALJ found to be not credible nor any identification of issues that undermined Plaintiff's subjective reports. Plaintiff contends that this fails to meet the Ninth Circuit's requirement that the ALJ provide more than a general statement. *E.g.. Treichler*, 775 F.3d at 1102 (ALJ cannot rely on general findings to reject claimant's subjective testimony but must articulate what testimony is not credible and why). Defendant asserts that the ALJ provided clear and convincing reasons supported by substantial evidence in the record because Plaintiff told her healthcare providers that her psychiatric medications were working, she was treated conservatively, her mental status examinations showed only a moderate degree of limitation, and her attendance at the census class, as well as babysitting her grandchildren, undermined her testimony.

I agree with Plaintiff that Defendant's arguments are insufficient and that the ALJ erred. First, the ALJ failed to meet the specificity standard in both describing the alleged limitations and in explaining how they are contradicted. In her credibility analysis, the ALJ makes little or no mention of any of Plaintiff's alleged subjective limitations attributable to a mental impairment. Tr. 22-23. She generally noted that Plaintiff had reported experiencing nervousness and felt bad about certain things which prevented her from being around people. *Id.* (also noting similar allegations that she is jumpy, nervous, and sounds made her fearful). As for functional limitations, the ALJ generally referred to an allegation that Plaintiff's impairments affected her

ability to complete tasks and concentrate.  Tr. 23.  These descriptions of Plaintiff's symptoms and alleged limitations are not specific enough to be meaningful.  Additionally, the ALJ fails to discuss how certain GAF scores, improvement in mood, alleged conservative treatment, or attending the census classes actually undermine the allegations of being jumpy, nervous, fearful, and challenged in completing tasks and concentrating.  In the one attempt at specifying a rationale, the ALJ found that attending classes for one to two weeks "goes against the claimant's credibility concerning how her impairments limit her work activity."  Tr. 24.  This is a conclusion, not an explanation.  It fails to identify why such attendance contradicts Plaintiff's allegations, for example, in attention or concentration, especially when Plaintiff testified that she could not, in the end, perform the actual job.

Second, the ALJ improperly focused only on records from January to March 2012 to determine that Plaintiff's mental impairments were not limiting.  There is no dispute that in this DIB claim, Plaintiff must establish disability before her March 31, 2012 date of last insured.  In support of her determination that Plaintiff's symptoms were not serious, the ALJ cited GAF scores and mental function assessments from January to March 2012.  Tr. 23-24.  The ALJ cites to no similar records from the preceding twenty-one month period of alleged disability.  As Plaintiff notes, occasional periods of improvement in mental health symptoms are not inconsistent with disabling symptoms.  *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (observations of symptom-free periods in the treatment of mentally ill claimants "must be read in the context of the overall diagnostic picture" and "occasional symptom-free periods are not inconsistent with disability") (internal quotation marks omitted).  "The fact that a person suffering from depression makes some improvement does not mean that the person's impairment

no longer seriously affects his ability to function in a workplace." *Id.* (internal quotation marks and brackets omitted); *see also Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) ("it is error to reject a claimant's testimony [regarding mental health impairment symptoms] merely because symptoms wax and wane in the course of treatment. Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working."). The ALJ did not discuss the mental health records prior to January 2012. In the absence of the context of the record as a whole, improvement of symptoms during the last three months of the period of disability is not a specific reason supported by substantial evidence in the record to reject Plaintiff's subjective limitations testimony which pertains to the entire period of disability.

Third, while conservative treatment can undermine a claimant's allegations of disabling symptoms, the lack of hospitalization and the use of psychiatric medications is not evidence of conservative treatment in the context of a mental health disorder. *E.g.*, *Kimble v. Berryhill*, No. 3:15-cv-01641-JE, 2017 WL 3332256, at *10 (D. Or. Aug. 4, 2017) (noting that hospitalization in the context of mental health is different than hospitalization for physical impairments) (citing *Bagdoyan v. Colvin*, No. CV 12–5312 RNB, 2013 WL 941965, at *4 (C.D. Cal. Mar. 11, 2013) ("the lack of history of psychiatric hospitalization . . . did not constitute a clear and convincing reason" to discount the plaintiff's testimony); *Delgiudice v. Barnhart*, No. EDCV 04-1528-MAN, 2006 WL 2830792, at *5 (C.D. Cal. Sep. 29, 2006) ("the ALJ's citation to Plaintiff's lack of hospitalization is not a clear and convincing reason for rejecting Plaintiff's credibility regarding her alleged mental limitations.")); *Sandberg v. Comm'r*, No. 3:14-cv-00810-ST, 2015 WL

2449745, at *6 (D. Or. May 22, 2015) (rejecting ALJ's determination that the claimant had only conservative and routine treatment for her mental health conditions because she had not been hospitalized; noting that the plaintiff was taking prescription medications for her mental health impairments, that such prescription medication "is certainly not conservative in the same manner as over-the-counter pain relievers," and observing that "no precedent suggests that a cocktail of prescription drugs is conservative treatment simply because the patient has not checked into a mental health facility.").  The ALJ's finding that Plaintiff's treatment has been conservative is not convincing in this context.

Finally, other reasons offered by Defendant are improper post-hoc rationalizations.  For example, the ALJ made no mention of Plaintiff's babysitting in the context of her credibility assessment.  *Trevizo*, 871 F.3d at 677 n.4 (district court erred in looking beyond ALJ's stated reasons and explanation to support ALJ's opinion); *Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) (court cannot affirm the agency on a ground not invoked by the ALJ without violating the *Chenery* rule) (citing *Sec. & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (stating that a reviewing court may affirm agency action only on "the grounds invoked by the agency")); *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (the district court may not make its own independent findings, and is "constrained to review the reasons the ALJ asserts.").  Thus, I do not consider such arguments here.

Because the ALJ failed to support her adverse credibility determination with clear and convincing reasons based on substantial evidence in the record, the ALJ erred.

II.  Step Two

The ALJ considers the severity of the claimant's impairment(s) at step two.  20 C.F.R. §

404.1520(a)(4)(ii). If the claimant does not have a severe medically determinable physical or mental impairment that meets the duration requirement, or a combination of impairments that is severe and meets the duration requirement, the claimant is not disabled. *Id.* A severe impairment is one that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). "Basic work activities" are the abilities and aptitudes necessary to do most jobs, including physical functions such as walking, standing, sitting, and lifting, and mental functions such as understanding, carrying out, and remembering simple instructions. 20 C.F.R. § 404.1522(b).

The Ninth Circuit has explained that the severity determination at step two is expressed "in terms of what is 'not severe.'" *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). The ALJ is required to consider the claimant's subjective symptoms, such as pain or fatigue, in determining severity. *Id.* "[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims." *Id.* (citing *Yuckert*, 482 U.S. at 153-54). An impairment is not severe only if it is a slight abnormality that has no more than a minimal effect on the ability to do basic work activities. Soc. Sec. Ruling (SSR) 96-3p, *available at* 1996 WL 374181, at *1. "[A]n ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (quoting SSR 85–28)).

The ALJ rejected the following physical impairments as nonsevere at step two: lumbar spinal degenerative disc disease, mild degenerative joint disease of the right knee, left wrist arthritis, degenerative changes in the bilateral hips, and status post 2006 gastric bypass with ongoing gastritis. Tr. 20. In regard to her lumbar degenerative disc disease, the ALJ noted that

an x-ray revealed the presence of degenerative changes with disc space narrowing in the lumbosacral spine, but that the x-ray "did not reveal any evidence of acute subluxation and her vertebral body heights were well-maintained." *Id.* The ALJ made no further comments about the lumbar disc disease. She dismissed the knee, wrist, and hip impairments as severe because the x-rays showed only mild changes and no serious abnormalities. *Id.* Then, without specifying what particular condition she was referring to, the ALJ made a general statement about Plaintiff's "condition" deteriorating in 2014 and 2015, after her date of last insured, noting that "it" was stable before this time with very conservative, yet unspecified, treatment. *Id.*

In regard to the gastric bypass, the ALJ found that Plaintiff underwent gastric bypass surgery in 2006 which resulted in her complaining of chronic diarrhea and gas up to April 2012. *Id.* More recently, however, between July 2014 and March 2015, the record indicated that Plaintiff was not complaining of abdominal pain, diarrhea, or constipation. *Id.* Finally, the ALJ remarked that Plaintiff took non-steroidal anti-inflammatory medications and continued to smoke even though her physicians had told her that both of these would increase her gastrointestinal issues. Tr. 20.

Plaintiff argues that the ALJ erred by finding these impairments to be nonsevere.

A. Lumbar Degenerative Disc Disease

An April 2011 x-ray of Plaintiff's lumbar spine, taken after she experienced a fall, showed moderate degenerative changes at the L5-S1 level with facet hypertrophy and disc space narrowing. Tr. 248. Vertebral body heights were well maintained and there was no evidence of acute subluxation. *Id.* Plaintiff reported low back pain radiating into her left lower leg, aggravated by movement. Tr. 245. A month later, Plaintiff continued to complain of low back

pain which was worse with standing or walking.  Tr. 331.  Another x-ray in May 2011 showed demineralization of the lumbosacral spine.  Tr. 559.  In October 2011, Plaintiff reported low back pain with radiation down her legs.  Tr. 325.  A physical examination revealed tenderness at the paraspinous musculature lumbar region and also at the sacroiliac joints.  *Id.*  She was advised to stretch and apply heat.  *Id.*  She received a renewed prescription for Percocet.  *Id.*  In January 2012, she reported continued back pain.  Tr. 321.

Plaintiff contends that it was error for the ALJ to rely on the portion of the April 2011 x-ray of Plaintiff's lumbar spine showing no acute subluxation and well-maintained vertebral body heights when the x-ray also showed degenerative disc disease and facet hypertrophy with disc space narrowing.  Plaintiff notes that the fact that some measures were normal does not eliminate the presence of abnormal findings.  Plaintiff also notes that contrary to the later statement by the ALJ that the state non-examining agency physicians found her impairments to be nonsevere, Tr. 25, the opposite is true.  Tr. 72 (Nov. 2013 agency physician determination that Plaintiff's degenerative back disorder and osteoarthrosis disorder were severe impairments); Tr. 84-85 (same determination in March 2014).

Defendant argues that the ALJ properly found Plaintiff's low back condition nonsevere because the April 2011 x-ray did not show any serious abnormalities and there was no evidence of worsening or radiculopathy until later, after her date of last insured.  Moreover, Defendant argues, Plaintiff established nothing more than a temporary injury which is insufficient to support disability.  Defendant suggests that the record, including the diagnosis of "back strain" after her fall, and advise to exercise, show that the effects from her fall were transient and did not appear to limit her significantly.

Defendant offers reasons in support of the ALJ's decision that the ALJ herself did not provide. The ALJ did not discuss the alleged transient nature of Plaintiff's back injury, its duration, or the fact that evidence in the record suggested it did not limit her significantly. As stated above, it is improper for the district court to rely on reasons not provided by the ALJ. Thus, I do not consider these rationalizations. The ALJ relied on a single reason in support of her low back nonsevere determination: the fact that the x-ray contained some normal findings. Tr. 20. I agree with Plaintiff that this is not a sufficient reason to find the low back condition nonsevere in the presence of abnormal moderate degenerative findings on the x-ray. Moreover, the ALJ was required to consider Plaintiff's complaints of pain. The ALJ failed to do so in her discussion at step two. The ALJ's step-two determination regarding Plaintiff's lumbar degenerative disc disease is not supported by the record.

B. Other Musculoskeletal Conditions

Plaintiff reported significant knee pain in April 2011. Tr. 311. A May 2011 x-ray showed demineralized bones, mild degenerative changes of the patellofemoral joint and medial compartment with "minimal osteophytic lipping at the medial joint line and upper pale of patella." Tr. 356. Plaintiff complained of continued knee pain in November 2011 and increased knee pain in January 2012. Tr. 321, 323.

The ALJ noted that x-rays showed only mild changes and no serious abnormalities. Tr. 20. In addition to the knee x-ray noted in the previous paragraph, she cited to two other records in support of this assertion.[2] Tr. 280-81 (Sept. 2013 x-ray showing mild degenerative changes in

---

[2] The ALJ cited to seven separate pages in the medical exhibits. Tr. 20 (citing to ALJ Exs. 3F at 3, 4, 5, 12; 5F at 31, 60; and 10F at 18). Two of these are duplicates of the May 2011 knee x-ray report found at page 356. Tr. 459 (5F at 60); Tr. 558 (10F at 18). Two bear no

the left hip); Tr. 289 (Aug. 2011 x-ray of left wrist showing mild to moderate arthritic change between scaphoid, trapezium, and trapezoid).

Plaintiff argues that a finding of "mild" does not mean that the impairments are nonsevere or do not cause "serious abnormalities." Defendant does not respond to this argument or otherwise address the ALJ's step-two finding regarding Plaintiff's alleged knee, hip, and wrist impairments. By citing to the records she described as showing only mild changes, the ALJ implicitly determined that they did not reflect an impairment that had more than a minimal effect on Plaintiff's ability to work. I agree with the ALJ as to the hip and wrist impairments. The hip x-ray shows only a mild condition and although the wrist x-ray shows a mild to moderate condition, Plaintiff fails to cite to records where she complained of ongoing pain related to either impairment. As a result, the mild objective findings and medical records were reasonably interpreted by the ALJ to mean that these two impairments caused no more than a minimal effect on Plaintiff's ability to work. In contrast, however, while the knee x-ray also showed only a mild degenerative condition, there are multiple places in the record where Plaintiff complained of knee pain. As noted above, the ALJ is required to consider the allegations of pain at step two. Because the ALJ failed to do so and because the knee x-ray contained some objective evidence of an impairment, the ALJ's step-two finding as to knee pain was error.

C. Gastrointestinal Impairments

The ALJ recognized Plaintiff's ongoing complaints of diarrhea and constipation, gastrointestinal discomfort, and abdominal cramping since undergoing gastric bypass surgery in

---

mention of any x-ray. Tr. 282 (3F at 5); Tr. 430 (5F at 31). Pages 3 and 4 of Exhibit 3F are not separate records but are two pages of a single x-ray report. Tr. 280-81.

2006. Tr. 20 (citing Tr. 315, 316, 321, 323, 341, 343, 391, 426, 444). The ALJ dismissed any gastrointestinal symptoms as severe because Plaintiff showed improvement more than two years after the period of disability. *Id.* (explaining that between July 2014 and March 2015, she was not complaining of abdominal pain, diarrhea, or constipation). As Plaintiff appropriately argues, the question is whether Plaintiff establishes disability before her date of last insured in March 2012. Later improvement may be relevant to whether she continues to be entitled to benefits on a continuing disability review. But, improvement more than two years after her date of last insured does not establish that the impairment was nonsevere during the relevant time period.

The ALJ also noted that Plaintiff took nonsteroidal anti-inflammatory medications (NSAIDs) and continued to smoke, despite being told that taking NSAIDs and smoking would increase her gastrointestinal issues. *Id.* The ALJ's implicit finding is that Plaintiff's complaints of gastrointestinal distress are not severe because she failed to follow recommended treatment. But, the ALJ's description of the record is not entirely accurate. The ALJ cited to six separate pages of the record in support of her determination that Plaintiff continued to take NSAIDs and smoke despite being repeatedly informed by her physicians of negative effects on her gastrointestinal health. Tr. 20 (citing 314, 347, 428, 448, 597, 599). The record at page 448 is a duplicate of the record at page 347. Of the five records, four simply note that Plaintiff had been previously advised against taking NSAIDs. Tr. 599 (March 2014 chart note stating under "Allergies": "Nsaids . . . Pt had Gastric Bypass and was told to avoid NSAIDS"); Tr. 597 (May 2014 chart note stating same); Tr. 428 (Jan. 2012 chart note stating that another doctor had told her she should not use NSAIDS for pain); Tr. 314 (Mar. 2012 chart note stating Plaintiff cannot take NSAIDs because of her past gastric bypass). None of these records refers to Plaintiff

smoking or being told not to smoke in regard to her gastrointestinal symptoms. None of these records indicates that Plaintiff takes NSAIDs. Instead, they note she should avoid them.

The only record to mention advice from a physician regarding NSAIDs and smoking is a December 2011 record from gastroenterologist Dr. William Kelley. Tr. 347, 448. In a section of his report addressing epigastric pain, Dr. Kelley notes that Plaintiff smokes three or four cigarettes per day. Tr. 346. He then said that he had read Plaintiff the "riot act" regarding smoking and NSAIDS, "neither of which she can do safely after a gastric bypass." Tr. 347. He then said that as for the NSAIDS, she used them "infrequently," and he asked her to stay away from them entirely "if possible." *Id.*

The record, contrary to the ALJ's statement, does not reveal that physicians had "repeatedly" told Plaintiff that smoking or NSAID use will increase her gastrointestinal issues. There is only one record where a physician notes a discussion with Plaintiff. That record shows that her use of NSAIDs was infrequent. Additionally, the physician did not raise the issue in the section of his report discussing diarrhea, only in the section discussing epigastric pain. He did not state that use of NSAIDs or smoking would increase her "gastrointestinal issues," only that they could not be taken or done safely after a gastric bypass. There is no explanation as to why. Thus, this record does not support the ALJ's finding that none of Plaintiff's gastrointestinal issues are severe.

Because the ALJ cited to several places in the record where Plaintiff complained of a variety of gastrointestinal symptoms and neither of the two reasons the ALJ offers are sufficient to support her determination that these symptoms were not severe, the ALJ erred.

In summary on the step-two analysis, the ALJ's determination regarding Plaintiff's wrist

and hip impairments is supported by the record. Her determinations as to Plaintiff's lumbar spine, knee, and gastrointestinal issues are not supported and are in error.

D. Harmful Error

In general, an ALJ's failure to discuss a claimant's impairment at step two may be deemed harmless when the ALJ's error did not prejudice a claimant at later steps in the sequential evaluation process. For example, in a 2005 case, the Ninth Circuit assumed, without deciding, that it was legal error for the ALJ not to discuss the plaintiff's obesity in his step-two analysis. *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005). The Ninth Circuit concluded, however, that, for purposes of step four, the plaintiff failed to point to any evidence of functional limitations due to her obesity that would have impacted the ALJ's analysis. *Id.* at 683. Further, at step five, the Ninth Circuit found that no prejudice occurred, because the ALJ "adequately considered [the plaintiff's] obesity in his RFC determination[.]" *Id.* at 684. Thus, in *Burch*, the assumed error was harmless. *Id.* at 682-84; *see also Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (finding that any error the ALJ committed in failing to list the plaintiff's bursitis at step two was harmless, because the ALJ "extensively discussed" plaintiff's bursitis and "considered any limitations posed by the bursitis at [s]tep 4").

In this case, unlike in *Burch* and *Lewis*, the ALJ's failure to consider Plaintiff's physical impairments as severe impairments is not harmless error. The ALJ never mentioned them again, either in her credibility assessment or in the RFC. In fact, the RFC affirmatively states that Plaintiff has the ability to perform a full range of work at all exertional levels. Tr. 22. While the ALJ may ultimately determine that Plaintiff has only slight or moderate functional limitations as a result of her physical impairments, that analysis must occur at later steps in the sequential

evaluation. Because the ALJ found Plaintiff's physical impairments related to her spine, knee, and gastric bypass to be nonsevere and failed to include any limitations from those impairments in the RFC, the step-two error is not harmless.

III. Physician's Opinion

Plaintiff was a patient at PeaceHealth Medical Group's Behavioral Health Services in 2012. Tr. 249-77. She first saw Richard Gross, L.C.S.W., for counseling services, and also saw Dr. Edmond Whiteley, M.D. beginning September 18, 2012. Tr. 268-69. She continued to see both Gross and Dr. Whiteley while a patent there. Tr. 249-77. Her treatment ceased at one point in late December 2012 because she lost her insurance. Tr. 249. However, she resumed treatment in January 2014. Tr. 499-514.

In May 2015, Dr. Whiteley completed a medical source statement regarding Plaintiff's mental health impairments. Tr. 608-11. He assessed her as having major depression, dysthymia, and generalized anxiety disorder. Tr. 608. He opined that these conditions caused marked limitations in Plaintiff's ability to maintain social functioning and concentration, persistence, and pace. Tr. 608-09. He also opined that she would have marked limitations in performing within a schedule, maintaining regular attendance, completing a normal workday without interruptions from psychiatric symptoms, and responding appropriately to change. Tr. 610. Dr. Whiteley further stated that Plaintiff would have difficulty responding to stress, as she was unable to handle the stress she already had in her life, even without a job. *Id.* He indicated she would need unscheduled breaks throughout the day and would miss two or more days per month, noting "I cannot see her working a full day in any capacity." Tr. 610-11. Finally, he opined that based on his treatment of Plaintiff, his review of her medical records, and his medical judgment, it was

reasonable to conclude that Plaintiff had been limited in her impairments since on or before

Plaintiff's date of last insured of March 31, 2012.  Tr. 611 (stating that he first saw Plaintiff

September 18, 2012 regarding "depression [illegible] 1½ years before that" and indicating that

her GAF then was 40); *see also* Tr. 268 (Dr. Whiteley Sept. 18, 2012 chart note stating that

Plaintiff reported worsening depression beginning one and one-half years ago).

If the treating physician's medical opinion is supported by medically acceptable

diagnostic techniques and is not inconsistent with other substantial evidence in the record, the

treating physician's opinion is given controlling weight.  *Ghanim*, 763 F.3d at 1160; *Orn v.

Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  If the treating physician's opinion is not contradicted

by another doctor, the ALJ may reject it only for "clear and convincing" reasons supported by

substantial evidence in the record.  *Ghanim*, 763 F.3d at 1160–61.

If a treating physician's opinion is not given "controlling weight" because it is not

"well-supported" or because it is inconsistent with other substantial evidence in the record, the

ALJ must still articulate the relevant weight to be given to the opinion under the factors provided

in 20 C.F.R. §§ 404.1527(c)(2)–(6).  *Id.* at 1161; *Orn*, 495 F.3d at 632–33.  Even if the treating

physician's opinion is contradicted by another doctor, the ALJ may not reject the treating

physician's opinion without providing "specific and legitimate reasons" which are supported by

substantial evidence in the record.  *Id*; *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

The ALJ gave Dr. Whiteley's opinion "little weight," explaining that

between January to March 2012, the claimant was scoring highly on mental health
screenings, in March 2012 she reported that she was feeling better and believed
her medication was helping, and in November 2012 the claimant was in California
babysitting her grandchildren and reported that she was overall well controlled on
her psychiatric regimen.  (Exhibit 4F/83, 85, 89, 90; 5F/80, 82, 88; 7F/3).

Therefore, I assigned Dr. Whiteley's opinion very little weight because not only did he start treating the claimant after the applicable time period, but his opinion is not supported by the objective evidence or the claimant's subjective reporting.

Tr. 25.

Plaintiff argues that the ALJ erred in assigning little weight to this opinion because the ALJ improperly relied on only a short period of time to assess the severity of her depression, the ALJ made errors in reciting the facts, and Dr. Whiteley explained that his assessment applied to her condition on or before her date of last insured. Defendant argues that the ALJ's reasons for discounting the opinion were valid because the objective evidence showed benign mental status examinations, the subjective evidence was that Plaintiff's medications were effective at controlling her depression and she was able to babysit her grandchildren which undermined any marked social limitations and an inability to maintain basic standards of behavior in the workplace, and any increase in depressive symptoms was related to situational stressors which resolved.

For the reasons explained in the discussion of Plaintiff's credibility, the ALJ improperly focused on only a three-month period of time to undermine Dr. Whiteley's opinion. As noted above, symptom-free periods of time in the mental health context are not convincing evidence of non-disability. Therefore, I agree with Plaintiff that the ALJ erred in discounting Dr. Whiteley's opinion by comparing his assessments to records from only the three-month period of January to March 2012.

Moreover, the records from the time period cited by the ALJ show a range of symptoms and include test results which may not be fairly characterized as benign. As she did in other places in her opinion, the ALJ cited to some duplicate records in support of her assertion that

Plaintiff's high scores on mental health screenings and improvement by November 2012 undermined Dr. Whiteley's assessed limitations. Exhibit 4F/83 is a duplicate of Exhibit 5F/80. Tr. 372, 479 (Mar. 7, 2012 chart note of Ericka Souders, Ph.D.). Exhibit 4F/85 is a duplicate of Exhibit 5F/82. Tr. 374, 481 (Feb. 15, 2012 chart note of Dr. Souders). The ALJ was correct that on those two occasions of March 7, 2012 and February 15, 2012, Souders ranked Plaintiff's GAF score at 60. Tr. 372, 374,479, 481. But, two other pages cited by the ALJ actually contradict her assertion. On January 26, 2012, Plaintiff received high scores on two mental health assessment tests: the PHQ-9 and GAD-7 tests which assess depression and anxiety, respectively. Tr. 378, 379 (cited by the ALJ as Exhibit 4F/89, 90). A "high" score is not, as the ALJ implies, indicative of stable, unremarkable mental health symptoms. Just the opposite is true and in fact, the assessment shows that she was at an intermediate level of suicide risk with severe and complex symptoms. Tr. 378.

Additionally, Plaintiff reported in January 2012 that Wellbutrin was not helping her depression, she lacked energy, and she was experiencing some passive suicidal ideation. Tr. 317. She was noted to be tearful and labile with a flat affect. *Id.* In March 2012, she had been on a new medication for one month and reported no noticeable change in her depression. Tr. 316. She reported finding it difficult to leave the house. *Id.* She was tearful when talking with her provider. *Id.* While she reported feeling a little better a few days later, Tr. 373, she noted increased depression again the next month. Tr. 371.

The ALJ failed to consider all of the relevant records for the January to March 2012 period on which she focused to discredit Dr. Whiteley's opinion   While some records from those three months show that Plaintiff's symptoms may not have been as serious as Dr. Whiteley

opined them to be, there is additional evidence which could support Dr. Whiteley's opinions. The ALJ erred by relying only on a three-month window of time and by not discussing all of the relevant records.

The ALJ also erred by citing to Plaintiff's taking care of her grandchildren as evidence that her mental health symptoms were not as severe as Dr. Whiteley opined. First, the record indicates that Plaintiff was with her husband and it is improper to conclude that she alone bore the responsibility for caring for her grandchildren. Tr. 260 (Oct. 2012 chart note by Dr. Whiteley noting that Plaintiff reported that "they," referring to Plaintiff and her husband, were going to California in November and "they will watch the other younger children"). Second, without more description of what the responsibilities actually entailed, it is improper to conclude that taking care of her grandchildren for a limited period of time is inconsistent with Dr. Whiteley's opinion. *See Trevizo*, 871 F.3d at 676 (ALJ erred in finding treating physician's opinion inconsistent with the plaintiff's childcare activities because "the record provides no details as to what [the plaintiff's] regular childcare activities involved . . . . Absent specific details about [the plaintiff's] childcare responsibilities, those [one-off childcare events such as taking a child to the doctor] cannot constitute 'substantial evidence' inconsistent with [the doctor's' informed opinion[.]"); *Id.* at 681 (with no information in the record about the plaintiff's childcare activities, ALJ improperly rejected the plaintiff's subjective statements about her limitations because "the mere fact that she cares for small children does not constitute an adequately specific conflict with her reported limitations"). Thus, that Plaintiff took care of her grandchildren with her husband for a limited period of time is not enough to conclude that Dr. Whiteley's assessments of her limitations are inconsistent with the record.

Finally, the ALJ erred by rejecting Dr. Whiteley's opinion because he did not start treating Plaintiff until after her date of last insured. Medical diagnoses and reports made after a claimant's date of last insured may still be relevant to the period of disability. *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988) (reports containing observations made after the period for disability remain relevant in assessing a claimant's disability; "medical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the pre-expiration condition"). However, although a medical opinion should not be rejected simply because it is remote in time, it can be rejected if it is not a retrospective analysis. *See Senter v. Astrue*, No. 10-165 PJW, 2011 WL 3420426, at *3 (C.D. Cal. Aug. 4, 2011) (ALJ may reject a medical opinion, even that of a treating doctor, where "it was completed . . . years after claimant's date last insured and was not offered as retrospective analysis"); *see also Boucher v. Colvin*, No. C13-47-MAT, 2013 WL 3778891, at *2–3 (W.D. Wash. July 18, 2013) ("while post-[date last insured] evidence cannot be rejected solely as remote in time, it can be rejected on the grounds that the evidence itself is not retrospective").

Here, Dr. Whiteley stated that Plaintiff's symptoms existed on or before her date of last insured. He offered little explanation, however, other than citing to his first appointment with her in September 2012 and noting, with some language that is not clearly decipherable, that she had depression for one and one-half years before that. The ALJ failed to discuss whether Dr. Whiteley's opinion offered a retrospective analysis of Plaintiff's symptoms. Given that Dr. Whiteley's opinion should not have been rejected simply because he began treating Plaintiff after her date of last insured, the ALJ, before rejecting Dr. Whiteley's opinion, should have discussed why his opinion was or was not relevant to the period of disability and whether his statement that

she had depressive symptoms one and one-half years before he first saw her was in fact retrospective. Without that discussion, the ALJ's rationale is not supported.

The reasons provided by the ALJ for rejecting Dr. Whiteley's opinion are either not specific, substantial, or supported by a sufficient explanation. Thus, the ALJ erred in rejecting that opinion.

IV. Remand for Additional Proceedings

In social security cases, remands may be for additional proceedings or for an award of benefits. *E.g., Garrison*, 759 F.3d at 1019 (explaining that if "additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded[,]" but "in appropriate circumstances courts are free to reverse and remand a determination by the Commissioner with instructions to calculate and award benefits") (internal quotation marks omitted).

To determine which type of remand is appropriate, the Ninth Circuit uses a three-part test. *Id.* at 1020; *see also Treichler*, 775 F.3d at 1100 ("credit-as-true" rule has three steps). First, the ALJ must fail to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion. *Garrison*, 759 F.3d at 1020. Second, the record must be fully developed and further administrative proceedings would serve no useful purpose. *Id.* Third, if the case is remanded and the improperly discredited evidence is credited as true, the ALJ would be required to find the claimant disabled. *Id.* To remand for an award of benefits, each part must be satisfied. *Id.; see also Treichler*, 775 F.3d at 1101 (when all three elements are met, "a case raises the 'rare circumstances' that allow us to exercise our discretion to depart from the ordinary remand rule" of remanding to the agency).

While Plaintiff seeks a remand in this case, she does not expressly request a remand for benefits. Based on the three-part test, remand for additional proceedings is appropriate. Although the ALJ erred in rejecting Dr. Whiteley's opinion and in finding Plaintiff's testimony not credible, the record as a whole does not conclusively establish disability and requires further development. In addition to considering the functional limitations, if any, from Plaintiff's lumbar spine, knee, and gastrointestinal impairments, the ALJ should reassess Plaintiff's depression symptoms and limitations for the entire period of disability and assess whether Dr. Whiteley's opinion is truly retrospective. This is not one of the rare cases where remand for benefits is warranted.

CONCLUSION

The Commissioner's decision at step two is affirmed in part, and is otherwise reversed and remanded for additional proceedings.

IT IS SO ORDERED.

Dated this ___30___ day of ___April_____, 2018

Marco A. Hernandez
United States District Judge